[No. 23265. Department One. May 4, 1932.]

THE STATE OF WASHINGTON, *Respondent*, v. BEN L. SCHULTZ, *Appellant*.[1]

*James F. O'Brien,* for appellant.

*Bertil E. Johnson, Ray C. Roberts,* and *H. B. Gardner,* for respondent.

PARKER, J.—The defendant, Schultz, was charged by an information filed in the superior court for Pierce county, reading, in so far as need be here noticed, as follows:

"That the said Ben L. Schultz, in the county of Pierce, in the state of Washington, on or about the 10th day of May, 1929, then and there being then and there unlawfully and feloniously, with intent to deprive and defraud Matt Hirvela, the owner thereof, did obtain from said Matt Hirvela the following described real property, . . . all of the value of Forty-five Hundred Dollars ($4500.00), . . . ; that the said Ben L. Schultz did obtain title to and possession of said real property in the manner aforesaid from said Matt Hirvela by color or aid of false and fraudulent representations, pretenses, trick and device, in that, the said Ben L. Schultz then and there being, did then and there wilfully and feloniously

[1]Reported in 10 P. (2d) 980.

represent that the Diatom Products Company of Idaho was an existing corporation, chartered by the State of Idaho, and said corporation was the owner of certain land containing valuable silica deposits situate in Kittitas county, Washington; that said corporation had issued the hereinafter mentioned bonds for the payment of money which bonds were falsely and fraudulently represented to be valid and of the value of Forty-five Hundred Dollars ($4500.00), and that the issuance thereof was duly authorized by said Diatom Products Company; and he then and there by means of said fraudulent representations, pretenses, trick and device, which the said Matt Hirvela believed and upon which he relied, induced the said Matt Hirvela to exchange the hereinbefore described real property for five (5) bonds of the said Diatom Products Company bearing Serial Nos. B-204, C-304, C-315, and C-325, C-326, which exchange was then and there consummated, but in truth and in fact the Diatom Products Company had no corporate existence; was nonexistent at the time, and owned no land in Kittitas county, Washington; the purported bonds were issued without authority of law and were valueless, and that said real property was obtained from said Matt Hirvela with intent entertained by said Ben L. Schultz, to and he did, then and there appropriate the same to his own use, . . ."

Schultz pleaded not guilty. His trial proceeded in that court, sitting with a jury, resulting in a verdict finding him guilty. His motion for new trial being by the court denied, final judgment upon the verdict was rendered against him, sentencing him to the state penitentiary; from which judgment he has appealed to this court.

Counsel for Schultz devotes his argument in this court largely to his claim of error on the part of the trial court in admitting in evidence the testimony of the state's witnesses Mr. and Mrs. Hanson, showing that Schultz, after obtaining title from Hirvela to the

real property in question, by similar false representations induced Mr. and Mrs. Hanson to loan him money upon his delivering and pledging to them bonds of the same import and issue as the bonds given to Hirvela in exchange for his real property.

Bearing upon this contention, the evidence very convincingly shows the following: On May 11, 1929, Hirvela conveyed his real property to an agent of Schultz for his benefit, by duly executing and delivering deeds therefor, being induced so to do by representations made to him by Schultz as charged in the information. Soon thereafter, Schultz delivered to Hirvela, in payment of the conveyances, purported negotiable coupon interest bearing bonds of the Diatom Products Company of Idaho, the principal sums of which aggregated $4,500. Each of these bonds upon its face is stated to be

" . . . one of a series of like tenor and effect, except as to amount and due date, aggregating Three Hundred Fifty Thousand ($350,000.00) Dollars issued under and pursuant to authorization of the board of directors of said company."

At the time of the execution and delivery of the conveyances and shortly prior thereto, Schultz made the representations to Hirvela as charged in the information, which representations were false, and induced Hirvela to make the conveyances and receive the purported bonds from Schultz in payment thereof. A short time thereafter, the real property was sold and conveyed by Schultz's agent to a third party, Schultz receiving the proceeds of that sale.

There was no such incorporated company in existence as the Diatom Products Company, nor any corporation of any similar name of the state of Idaho, until May 3, 1930, when Schultz and two other persons caused to be filed in the office of the secretary of state

of Idaho articles of incorporation purporting to incorporate a company designated as "Diatom Products Company."

The testimony of Mr. and Mrs. Hanson, objected to by counsel for Schultz, is, in substance, that, on April 24, 1930, before there was any such corporation as Diatom Products Company, Schultz induced them to loan to him $350 by delivering and pledging to them as security therefor a purported one thousand dollar bond of the same issue of the Diatom Products Company as the bonds given by Schultz to Hirvela for his real property, and by making similar false representations to them as he had made to Hirvela. The purpose of the prosecution in producing this testimony was to support its claim of fraudulent intent on the part of Schultz in obtaining the conveyance from Hirvela of his real property, as the fruit of a fraudulent scheme for obtaining the property of others.

This court has many times had before it the problem of when such evidence tending to show offenses other than the one charged is admissible. The law upon that subject, in the light of our prior decisions, was well stated by Judge Ellis, speaking for the court, in *State v. Schuman,* 89 Wash. 9, 153 Pac. 1084, Ann. Cas. 1918A 633, as follows:

"It is, of course, a general rule that evidence of the commission of a separate and distinct crime is inadmissible to aid the conviction of a defendant for the crime charged. There are, however, exceptions to this rule as thoroughly established as the rule itself. Where the purpose is to show a system or general design from which a criminal intent or purpose may be inferred in the commission of the particular act charged, collateral offenses of the same character and perpetrated in the same way, though not otherwise connected, can always be put in evidence as tending to establish the system or design. The logical basis of this exception

to the general rule of exclusion is thus admirably expressed by Wharton:

" 'When the object is to show system, subsequent as well as prior collateral offenses can be put in evidence, and from such system identity or intent can often be shown. The question is one of induction, and the larger the number of consistent facts the more complete the induction is. The time of the collateral facts is immaterial, provided they are close enough together to indicate that they are a part of the system. In order to prove purpose and design, evidence of system is relevant; and in order to prove system, collateral and isolated offenses are admissible from which system may be inferred.' 1 Wharton, Criminal Evidence (10th ed.), p. 146, § 39.

"This exception has been recognized and adopted as a basis of decision by this court in many cases. *State v. Pittam,* 32 Wash. 137, 72 Pac. 1042; *State v. Craddick,* 61 Wash. 425, 112 Pac. 491; *State v. Downer,* 68 Wash. 672, 123 Pac. 1073, 43 L. R. A. (N. S.) 774; *State v. Wappenstein,* 67 Wash. 502, 121 Pac. 989; *State v. Hazzard,* 75 Wash. 5, 134 Pac. 514; *State v. Shea,* 78 Wash. 342, 139 Pac. 203."

Our later decisions adhere to this view: *State v. Anderson,* 107 Wash. 336, 181 Pac. 696, 185 Pac. 624; *State v. Austin,* 121 Wash. 108, 207 Pac. 954; *State v. Kreiss,* 133 Wash. 256, 233 Pac. 649; *State v. Clamp,* 164 Wash. 653, 3 P. (2d) 1096. See, also, 16 C. J. 597, and decisions there cited.

It needs no argument to demonstrate that intent to defraud is of the very essence of this charged crime. The trial judge so instructed the jury. It follows, we think, that this testimony of Mr. and Mrs. Hanson was admissible as throwing light upon the alleged intent of Schultz in making false representations inducing Hirvela to part with his title to his real property in exchange for the bonds in question.

The somewhat lengthy period between the time of Schultz's having obtained title to Hirvela's real prop-

erty in May, 1929, and his obtaining the loan from Mr. and Mrs. Hanson, induced by like representations in April, 1930, may furnish some ground for arguing that those two transactions are not near enough related in point of time to make testimony of the latter admissible in this case. However, when we consider that the consummation of the two transactions was induced by Schultz by the making of substantially the same false representations, and by transferring and pledging bonds of the same purported issue of the Diatom Products Company, all before the Diatom Products Company had a corporate existence, we are led to the conclusion that this testimony of Mr. and Mrs. Hanson was admissible as throwing light upon the alleged fraudulent intent of Schultz attending his transaction with Hirvela.

Some other assignments of error are made in behalf of Schultz, each of which is very briefly presented to us in the brief of his counsel. We have examined these as best we could, in view of the manner of their presentation, and deem it sufficient to say that we regard them without substantial merit. We find no prejudicial error therein.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, BEELER, and HERMAN, JJ., concur.